May it please the Court, Brian Carroll for SCVNGR, Inc. doing business as Level Up. We reserve three minutes. Level Up's appeal in this case is not the typical appeal that this Court is now seeing under Octane Fitness, in which the Court's being asked to dissect a patentee's unsuccessful claim construction positions or its unsuccessful infringement assertions and make a determination about the reasonableness of those positions. The exceptional thing in this case is that the patentee offered no positions for this Court to dissect. Level Up filed its motion for summary judgment immediately with its answer based on publicly observable facts about the Level Up mobile payment system. Yeah, but when we heard the appeal, it wasn't a frivolous case on the merits. There was a suggestion that the phone was a point-of-sale terminal based on the addition of the tip in restaurant transactions. So if it wasn't objectively unreasonable, why was the District Court in error here in denying fees? Well, let me address the frivolousness. So what happened at the summary judgment phase in this case is that the patentee didn't dispute a single statement of fact, didn't offer any evidence at all of infringement, didn't submit even a declaration in support of its infringement. It didn't dispute Level Up's proposed claim construction. There was only one term in dispute. We proposed a construction of the term transaction terminal. They didn't dispute that or offer any additional construction. They didn't ask for any discovery. It was clear from the record at that point that the cell phone was used to add a tip in restaurant transactions, right? Yes, Your Honor. This was a factual infringement assertion, again, with no dispute over claim construction and no dispute as to any of the facts. So there was a question of infringement? It was a question of infringement that the court looked at, the trial court looked at, and on summary judgment determined that no reasonable juror could ever find infringement that Level Up infringed Mr. Barron's complaint. And that happened at summary judgment. Now, this appeal is from the decision on attorney's fees. And on the decision of attorney's fees, after the court had already said- I don't quite understand what difference it makes that it was decided on summary judgment. I mean, there are all kinds of cases where there's an undisputed issue of fact and the fact that that's done relatively early on and on undisputed facts doesn't mean that the losing side's position is so frivolous that attorney fees are warranted. Well, Your Honor, I don't think that the district court can make a determination on summary judgment that no reasonable juror could ever find infringement on this, on an undisputed record. It's not like- That makes it automatically, objectively unreasonable? It does in this case, Your Honor. And the reason it does in this case is twofold. Really, really onefold. Because nothing changed from the time that Mr. Barron decided to file his complaint against Level Up to the time that the district court determined that no reasonable juror could ever find infringement on that claim. This is not a case in which some fact came out during the discovery. Your Honor, it could still be a close case even though he won on summary judgment, right? No, it can't be, Your Honor. If it was a close case, then summary judgment couldn't have entered. No, summary judgment is whether there's a genuine issue of material fact. Whether there's a genuine issue of material fact. You can agree on the facts and then disagree about how the law applies to those facts. Absolutely. And if there's a reasonable disagreement about how the law can apply to those facts, that's for the jury to determine those facts. It's not that summary judgment enters in every case. No, it's not. It's not for the jury to decide a legal question. I mean, if there's an agreement about the facts and as a matter of law, the district court decides no infringement, then he or she can grant summary judgment. That doesn't mean it's per se unreasonable. There may be some window for discretion in the district court to determine that a case that is so frivolous that no reasonable juror could ever find infringement. But it's not so unreasonable. But that's not the test on summary judgment. It's not that the case has to be frivolous. You can get summary judgment on cases which are not frivolous. It's just that there's no genuine dispute of material fact. That doesn't mean that even the factual part of it is frivolous. I guess that may be true. But what I'm focusing on here is the determination at the time he filed as to whether a reasonable patentee would see merit in that claim. And what the district court said in its decision on the 285 motion here is, I don't find that this is objectively baseless. At the time Mr. Barron filed, he could have thought there was merit in that claim. And then we move forward. Nothing changes. He files that complaint. We move for summary judgment. It's not that he was saying, this is how I'm interpreting the claim. I think that the phone can be part of the transaction terminal. And that position gets rejected by the court. And then the court enters summary judgment. That's not at all what happened here. The construction was agreed upon. The facts were agreed upon. He was just hoping to hold on and see if he could survive an early summary judgment and let this litigation go. If we want to get into dissect the reasonableness of the position, it's completely unreasonable to say that the consumer's phone could be part of the transaction terminal. He's made this argument that, well, we thought the phone, a phone, could be part of the transaction terminal. That's really a straw man. Why is it unreasonable when the TIP is added using the phone? So the first argument he made was that the phone itself could be part of the transaction terminal. That's a straw man. Everybody agrees that. Why is that a straw man? Why does it have to be part of the transaction terminal when the TIP part of the financial transaction is entered into the phone? So as a base, everyone agrees that a transaction terminal could be a tablet or a phone or any type of device. That was undisputed. The question is not whether it's any type of device. It's whether the consumer's device could be part of the merchant's transaction terminal. And the undisputed construction of a transaction terminal in this case is a device that communicates over a secure financial network, such as the MasterCard or Visa clearance networks, and communicates transaction information for authorization. Even if you were to take this argument that the makeup of the transaction terminal is somehow transient over time, that consumer A's device can be part of the transaction terminal when it does a transaction, and consumer B's next-in-line can be part of the transaction terminal when it does a transaction, the phone is firewalled off from that point-of-sale device that's connected to the secure financial network. The entire basis for his patent is this is an alternative to communicating over the public Internet as a way to reach people that don't have cell phones or Internet-connected devices. And the way we do that is by communicating over the secure financial networks to these terminals, like ATM terminals or retail terminals that are wired in and firewalled to the secure network. Even if the phone is considered part of the transaction terminal because you're scanning a QR code, it's never part of any device that's communicating over that secure financial transaction network. That would inherently destroy the security of those terminals. And that's what the patent is seeking to avoid. Level-up is only sending messages over the public Internet to that phone. And when the phone is receiving messages over the public Internet, there's no connection between that user's phone and the point-of-sale terminal. There's no messages ever transmitted between the phone and the point-of-sale terminal. In fact, the phone could be an airplane. When you enter the tip onto the phone, it is transmitted and communicated, so it's part of the transaction. There's two points in time. If you're setting the tip, all it does is rearrange the QR code. There's no wireless communication. You then communicate the QR code with your token. For every transaction, that's true. But for restaurant transactions, it does something more. It doesn't just provide the code. It also enables the customer to enter a tip into the phone, which gets transmitted to the merchant's terminal, and the tip is added. Absolutely, Your Honor. It's no different than if I present my credit card to a waiter at a restaurant, and he takes it and scans it, scans my credit card token into the terminal, and he comes back and asks me how much I want to add for a tip, and I say 20%, and I sign the receipt, and I give it back to him, and he manually enters 20% into the terminal, and then that goes up to the financial transaction network. In no way would anyone ever suggest that that makes my credit card part of the merchant transaction terminal device. And the same is true here. Even if you were to say that that does, at that point in time of the transaction, makes the phone part of the transaction terminal device, that's step one of the claim. Step two of the claim is receiving the message at that same transaction terminal. And when the message is received, it's not received at the point of sale, it's received only by the user's phone, and that's over the public internet, which is completely entirely separate from the point of sale at that point, and there's never any communication. So the takeaway here is that even if that were true, the message received at the phone is not received at the same transaction terminal device as the transaction is performed, and that's an express requirement to claim, it has to be the same device. So if you want to say that the phone is part of the transactional terminal for step one, it's certainly not part of the transaction terminal for step two. And there's just, if you read the patent in the background, there's just no basis for asserting that Level Up's system here has anything to do with Mr. Barron's method of delivering messages over a financial transaction network. That's why the court entered summary judgment. Messages are delivered to the phone, right? Only over the public internet. Never over the financial transaction network, which is part of the construction, the undisputed construction of transaction terminal. In that sense, this case is very similar to what this court just decided ten days ago in Lumenview, which is Lumenview sent it to a construction, and they asserted infringement under that construction, and the court found there's no chance they could have ever proved infringement under that construction. The facts are exactly the same here. What did the district court do in Lumenview? The district court awarded fees. The district court here didn't award fees. Right. Distinction. Oh, I certainly understand the distinction, Your Honor. The difference here is that this is not a case where, like I said, where a good faith claim construction was rejected, or where some facts came out that undercut the patentee's infringement contentions. This is a case where nothing changed. The facts known to Mr. Barron when he asserted that complaint are the same facts that the district court reviewed de novo. And the district court apparently thought those arguments on summary judgment, while not warranting a denial of summary judgment, were not sufficiently weak to award fees. That's true. Which we reviewed for abuse of discretion. Okay, that's true. I mean, you can spend like five minutes explaining to us how this patent works, how their system works, why there's no infringement, and the like. The district court was in a better position than us to judge whether those arguments completely lack merit or not. And let me get into, then, the detail of the opinion and the factual errors that this court does review, and which this court has reversed on, for example, in Bi-X and in other cases. And in this case, the primary foundation for the district court finding no objective baselessness was its statement that the level up map functions reasonably similar to the app described in the specification. That's wrong as a legal matter, as you know. The court's not here to compare the product to the specification. The court wasn't relying on any claim-by-claim analysis by the patentee, because the patentee didn't provide one. The court didn't provide one to get to its determination of objective baselessness. All it did was compare to the spec. That's also factually wrong. As we just discussed, there's nothing in the specification that would suggest that there's any messaging to a mobile device. In fact, the patent says that that's the opposite. That's the problem it's trying to solve. That level up is essentially the antithesis of the description. So those are wrong as a legal matter and as a factual matter. The court's reliance on the pending appeal as evidence of the objective baselessness, I think, is clearly an incorrect factual issue, which this court should look at and remand, at the very least, for consideration truly of the objective baselessness, including a claim-element-by-claim-element comparison of the alleged infringement. Now, before I get into my rebuttal time, I just want to suggest one last thing, which is the Supreme Court standard, just taking it back to a high level, the Supreme Court standard is whether this case stands out from the others with respect to its merit. And we looked at the others. And I'm not aware of any case in which summary judgment of non-infringement entered immediately after the answer. And as the court pointed out, that suggests the meritlessness of the patentee's claims. In this case, it's already being cited by other patent holders and by other entities as a case that stands out against the others. Patentees are saying, well, if I make it past the scheduling conference, or if I get to a claim construction hearing, I did better than the patentee in that case. And that case was found to be not exceptional. And I think that if the court affirms this case and affirms the reasoning and the flawed reasoning, the flawed factual conclusions, both on objective and subjective facts in the district court, it's going to send a message to district courts that their discretion and objective basis is unassailable. If a claim that can't survive summary judgment immediately at the answer, with no dispute of claim construction or dispute of fact, is an objectively baseless, then it's going to eviscerate the purpose of Octane or any hope of having a uniform approach by the district courts across the country in applying discretion to 85 cases. I'm going to reserve the last two minutes for rebuttal. Thank you. Thank you, Mr. Carroll. Mr. Myrick. Thank you, Your Honor. I'm John Myrick. I appear today for Jack Barron. What this case presents is the issue of whether the trial court abused its discretion in not awarding fees. It's a little ironic, listening to my brother's argument, because Octane Fitness, I suggest, stands for the proposition that the district court didn't have enough discretion. And in Octane Fitness, the Supreme Court, I would suggest, gave the district court more authority to exercise discretion. Having exercised that discretion, my brother now wants to go back to an argument that if you lose its summary judgment, your case was one on which the district court must award fees. And that simply is, I suggest, not what the Supreme Court intended on Octane Fitness and on the facts of this case in any event, it's not justified. As Your Honor noted, the district court itself referred to the tip and the fact that a tip could be entered. And that distinguishes, at least in my mind, the level up application from a credit card. To hear my brother talk, the level up application is no different from a credit card. You hold it up, it puts a number in. And that's not quite how it works, as the district court noted in saying that there could be a tip. My client, and for that matter myself, were quite disappointed when the district court said that using a cell phone in this fashion is not a transaction terminal. We thought there was a good argument that it was a transaction terminal. And it wasn't just myself as a trial attorney and my client as the interested inventor, but there were two patent attorneys, separately and independently, who reviewed it and advised that this was a case that was worthy of bringing. And they referred to various points in the record, that's Mr. Rangelston and Mr. Smith. Given that, we went forward with the case. Before filing the suit, we sent a very detailed claims analysis, we called it a preliminary claims analysis, to my brother, going through everything that was publicly available concerning how the level up application worked. And comparing that on a text-by-text basis with the statute, I beg your pardon, with the patent, and they showed all the areas in which it appeared to us that what level up was at least telling the public that its application would do, ran into the various claims that were in the patent. As I say, the trial court disagreed that the cell phone was being used as a transaction terminal, and unfortunately this happens sometimes. I'd like to think that I win more cases than the other side does, but you do lose cases. Even the district judge in his summary judgment decision said the cell phone could in theory be a transaction terminal, but on the basis of what he saw before him in summary judgment, he decided that it was not a transaction terminal. Again, as I read the Octane Fitness case, there needs to be a finding of abuse of the litigation, or that it just was a case that didn't have any merit. There was certainly no litigation abuse. The district court judge complimented both parties on getting the case to him in an efficient fashion without running up the costs of their clients. And in terms of was there a good faith basis to bring the case, again, both the claims letter that was sent initially and the opinions from not one but two patent counsel were a pretty good indication that Mr. Barron was not wasting the time of the district court by filing this case. As to our other arguments, I'll rest on what's in the brief, unless the bench has some questions for me. Okay. Thank you, Mr. Myron. Thank you. Mr. Carroll, you've got a little less than two minutes. Yeah. A couple of quick brief points. As to the TIP, if this court were going to affirm the district court's ruling on fees and find that the TIP presented a reasonable argument, I'd ask the court to go back and look for the record evidence that was submitted by the patentee on the TIP feature. There is none. They submitted no evidence at all as to how the TIP feature functioned in the level of that. They didn't raise that argument at summary judgment. That was an after-the-fact argument raised to this Court of Appeal, raised for the fees motion. There is absolutely no record evidence on which the district court could have relied either at summary judgment or in its fees motion to find that that provided an objective basis. Second, as to the subjective factors, Mr. Barron mentioned his diligent infringement investigation. We offered evidence that the affidavit that he submitted from his patent prosecution counsel, Mr. Engelson, was fabricated. It was actually false. He said that he had done six months of use of the level of service prior to filing the complaint. From our records, we showed that he hadn't used the service for over a year. And in response, they didn't submit a declaration from Mr. Engelson. They identified another attorney at a different law firm who actually did that investigation. All of that evidence is ignored by the district court in its motion denying our fees. I should also point out the district court denied our motion for discovery on the subjective factors without any analysis whatsoever. So by ignoring some of the evidence and then relying on an absence of evidence on the subjective factors as well, Level Up should have been entitled to some opportunity to take discovery and submit that evidence to the district court if the district court was going to reach that evidence. And in terms of litigation abuse, I'd say that there was no litigation abuse in this case. There couldn't have been. The case didn't last long enough. It literally ended immediately after the pleadings. There was no opportunity for vexatious or frivolous litigation. That's not part of our assertion here. It certainly doesn't have to be present under Octane Fitness in order for fees to be awarded. The last thing I want to mention just quickly is the idea that the court relied most significantly on the fact that Mr. Barron was not a patent assertion entity. And I'd suggest to your honors that that is not a relevant consideration in this case. This court has said that where that evidence is presented, where a patentee is executing a campaign of apparently extortionate lawsuits, that can be considered to show bad faith in the case at bar. But there's certainly no requirement that the patentee be a patent assertion entity or exhibiting a campaign in order to be subject to fees under 285. And I think we're out of time. Thank you, your honors. Thank both counsel. The case is submitted.